UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
WELLS FARGO CENTURY, INC.,                          MEMORANDUM
                              Plaintiff,             & ORDER


                    -against-

                                                    04CV1381(SLT)(VVP)

MICHAEL HANAKIS,

                              Defendant.
-------------------------------------------------X
TOWNES, U.S.D.J.

        Defendant's motion to dismiss is denied.  This memorandum briefly address Defendant's

claims.

                        I.  *Facts and Procedural History*

        The following facts are drawn from the amended complaint filed in this action (the

"Amended Complaint") and construed in the light most favorable to the plaintiff, Wells Fargo

Century, Inc. ("Wells Fargo" or "Plaintiff").  *CutCo Indus. v. Naughton*, 806 F.2d 361, 365 (2d

Cir. 1986).  Because the Amended Complaint incorporates by reference an Affidavit in Support

of Arrest Warrant in *United States v. Hanakis*, 04-MJ-384 (E.D.N.Y. 2004) (Azrack, M.J.) (the

"Affidavit") and Superceding Indictment in *United States v. Hanakis*, 04-CR-619 (Gleeson, J.)

(the "Superceding Indictment"), the facts contained therein were also considered.  *Blue Tree*

*Hotels Investment (Canada), Ltd. v. Starwood Hotels and Resorts Worldwide, Inc.*, 369 F.3d 212,

217 (2d Cir. 2004) ("Our review is generally limited to...the complaint and...any documents that

are either incorporated into the complaint by reference or attached to the complaint as exhibits.")

(citations omitted).

Plaintiff alleges that "[i]n 2003, while fraudulently concealing [his] identity and existence from Wells Fargo, [Michael Hanakis ("Hanakis") or ("Defendant")] arranged for other persons to approach Wells Fargo for a line of credit to be used for D.C.A.'s business." (Am. Complaint ¶ 6.) A cooperating witness (the "CW") in the case of _United States v. Hanakis_ admitted to having worked for Hanakis from approximately April 1997 until April 1999 at a Queens-based apparel firm. (Affidavit ¶ 3.) In April 1999, the CW then established a firm in his own name (the "Front Company" or "DCA"), to which Hanakis was a principal and investor from its inception. (Am. Complaint ¶ 10; Affidavit ¶¶ 3-4.) Hanakis' criminal record and credit history made it difficult for the Front Company to obtain financing. (Affidavit ¶ 4.) As a result, the Amended Complaint reads, Hanakis hid his participation in the Front Company from prospective lenders and, pursuant to an agreement with the CW, the Front Company applied for and received over $8 million in loans between April 1999 and March 2004. (Affidavit ¶ 4.) Hanakis is alleged to have spent a "substantial portion" of the funds to pay off personal debts. (Affidavit ¶ 6.) Additionally, Hanakis, the CW and others "repeatedly fabricated accounts receivable documentation, such as invoices and bills of lading, asserting that customers owed the Front Company millions of dollars for goods sold, when in fact, the 'customers' in question were Hanakis' Corporations or other entities that he controlled, to whom the Front Company had sold no merchandise whatsoever." (Affidavit ¶ 7.) On or about March 22, 2004, Hanakis was arrested and charged with violating 18 U.S.C. § 1341 for criminally defrauding Wells Fargo and other lenders through use of the United States Postal Service. (Am. Complaint ¶ 8.) On May 20, 2005, Hanakis was convicted of one count of conspiracy to commit fail fraud and 14 counts of mail fraud. (_See_ _United States v. Hanakis_, 04-CR-691.)

Plaintiff's Complaint alleges that Defendant's offenses "constitute a pattern of racketeering activity in that there was repeated criminal conduct which by its nature projects into the future with a threat of repetition, and an interrelationship among the predicate acts." (Am. Complaint ¶ 19.) The pattern of racketeering activity is alleged in support of Plaintiff's claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 (a) - (d) ("RICO") (Am. Complaint ¶¶ 15-32.) Plaintiff also alleges damages under N.Y. Debtor and Creditor Law §§ 273-6, common law fraud and unjust enrichment. (Am. Complaint ¶¶ 33-58.)

Defendant moves to dismiss the Complaint on the grounds that it fails to state a cause of action under RICO, that it fails to allege fraud with particularity, and, in the alternative, that the action should be stayed under the *Colorado River* abstention doctrine. (Def. Mem. of Law at 1.)


II.    *Discussion*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint where the plaintiff has failed to state a claim upon which relief can be granted. When evaluating a Rule 12(b)(6) motion, the court must ascertain, after presuming all factual allegations in the pleading to be true and viewing them in the light most favorable to the plaintiff, whether or not the plaintiff has stated any valid ground for relief. *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993). The court may grant a Rule 12(b)(6) motion only where "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) (*quoting* *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

A.      *Rule 9(b)*

"Because [Plaintiff's] claims are based on allegations of fraud, they must satisfy the pleading requirements of Federal Rule 9(b)." *First Interregional Advisors Corp. v. Wolff*, 956 F. Supp. 480, 484 (S.D.N.Y. 1997). Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). To satisfy the particularity requirement of Rule 9, Plaintiff must "give particulars as to the respect in which Plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Id.* at 485. However, "[t]here is a recognized exception to [Rule 9(b)]" wherein "fraud allegations may be so alleged as to facts peculiarly within the opposing party's knowledge, in which event the allegations must be accompanied by a statement of the facts upon which the belief is based." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (citations omitted). Thus, "[t]he complaint in a RICO action need not be specific as to each allegation of mail or wire fraud when the nature of the RICO scheme is sufficiently pleaded so as to give notice to the defendants." *Wolff*, 956 F. Supp. at 485. The Court finds that the Amended Complaint, Affidavit and Superceding Indictment give sufficient notice to Defendant of the allegations contained therein, satisfying Rule 9(b).

B.      *RICO Requirements*

"The RICO statute...authorizes suit by any person injured in his business or property by reason of a violation of [18 U.S.C.] § 1962." *Attick v. Valeria Assocs., L.P.*, 835 F. Supp. 103, 110 (S.D.N.Y. 1992). "[T]he civil RICO plaintiff must show that the defendant[] [was] responsible for the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

activity." *Cullen v. Margiotta*, 811 F.2d 698, 712-3 (2d Cir. 1987). With respect to the RICO claims contained in the Amended Complaint, Defendant argues that Plaintiff has failed to allege both a "pattern" of racketeering activity and a RICO enterprise. As such, Defendant argues, all RICO claims should be dismissed.

1.     *Pattern of Racketeering*

With respect to the "pattern" requirement, the RICO statute states only that a "'pattern of racketeering' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5) (2000). Called upon to determine whether multiple acts in furtherance of a single scheme qualify as a "pattern of racketeering," the Supreme Court's decision in *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989), articulated the applicable standard to determine what constitutes a pattern.

"RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff...must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *Id.* at 239 (emphasis in original). "What a plaintiff...must prove is continuity of racketeering activity, or at least its threat." *Id.* at 241.

Defendant's conviction for mail fraud precludes his disputing Plaintiff's allegations as to the number of acts committed or their relatedness. "[M]ail fraud requires two elements– (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts) and (2) use of the mail for the purposes of executing, or attempting to execute, the scheme (or specified fraudulent acts)." *Carter v. United States*, 530 U.S. 255, 261 (2000). Hanakis is, therefore, collaterally estopped from arguing here that Plaintiff has failed to properly allege

either his commission of those 15 predicate acts or that the acts are related. *New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82, 86 (2d Cir. 2000) ("A criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel...in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case."); *Suffolk County Dep't of Social Servs. ex rel. v. James M.*, 83 N.Y.2d 178, 182-4 (plaintiff's submission of indictment, certificate of conviction and sentencing minutes met burden of establishing application of collateral estoppel). What remains is Defendant's claim that the acts did not amount to or pose a threat of continued criminal activity. As such, the Amended Complaint must be examined to determine if Wells Fargo has sufficiently alleged continuity, which exists in two forms, both of which Defendant argues are absent.

           a.     *Close-Ended Continuity*

"A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Id.* at 242. A "substantial period of time" is greater than "a few weeks or months" and is certainly achieved within "a matter of years." *GICC Capital Corp. v. Tech. Finance Group, Inc.*, 67 F.3d 463, 467 (2d Cir. 1995) (citations omitted). The Amended Complaint alleges a scheme lasting from April 1999 until March 2004 in which Hanakis and the CW defrauded various lenders through the use of fraudulent mailings and wirings[1] and secured over $8 million in loans. (Affidavit ¶ 4.) The

---

      [1] Defendant argues that communications with Lenders 1 and 2 cannot be considered predicate acts because those lenders are New York-based, and therefore, communication with them is intra-state and beyond the reach of RICO. (Def. Reply Mem. of Law at 3 (*quoting Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F. 2d 229, 243-4 (2d Cir. 1999)). However, it is not the state of incorporation of the lenders that determines whether the predicate mail and wire fraud acts were committed through the use of interstate channels. Rather, the question is whether communications between Defendant and Lenders 1 and 2 utilized interstate

predicate acts alleged include, *inter alia*, misrepresenting the volume of business and submitting fraudulent accounts receivable information to various lenders over a five year period and the misappropriation of those funds received by Hanakis. (Affidavit ¶¶ 6-9).

Defendant argues that, because Plaintiff's involvement in the alleged scheme began upon its assumption of the Front Company's debt in September 2003, the "allegations regarding the period April 1999 to September 2003 do not constitute predicate acts" for the purpose of Plaintiff's civil RICO claims. (Def. Reply Mem. of Law at 3.) In making that argument, Defendant cites cases in which the plaintiff's connection to the predicate acts are far more remote than in the instant case. *See, e.g., Ray Larsen Assocs., Inc. v. Nikko America, Inc.*, 1996 WL 442799, at *6-7 (S.D.N.Y. Aug. 6, 1996) (rejecting argument that scheme to defraud Internal Revenue Service related to injury when plaintiff argued lost commissions under agreement). Defendant is correct that the court is "only to consider those acts which have resulted in business or property harm" to Plaintiff. *Shamis v. Ambassador Factors Corp.*, 1997 WL 473577 (S.D.N.Y. Aug. 18, 1997). However, in the cases cited, that principle is applied in order to thwart plaintiffs' attempts to recover under RICO for injuries too remotely connected to the predicate acts. *See Shamis*, 1997 WL 473577, at *15 (citing *Ray Larsen* and *Committee to Defend the United States Constitution*, 776 F. Supp. 568 (D.C. 1991), in finding plaintiff's purported injury "too remotely related" to allegations of unrelated fraudulent predicate acts); *see also Burdick v. American Express*, 865 F.2d 527, 529 (2d Cir. 1990) (employee fired after

_____

mail or wires in furtherance of the scheme. The court in *Cofacredit* found that plaintiff failed to show that any communications in relation to the alleged predicate acts were either interstate or international in nature, a situation drastically different from the case at hand, where Defendant is alleged to have used interstate channels to communicate with all three lenders. (*See* Superceding Indictment ¶¶ 10, 12.)

refusal to join alleged scheme was not an "intended victim" of scheme). Thus, though an injury that flows from predicate acts is not *necessarily* the type that Congress, in enacting RICO, sought to prevent, Plaintiff's alleged injury is precisely the type targeted and the Court does not find the predicate acts of mail or wire fraud insufficiently related to Plaintiff's injuries in this instance. Rather, courts are to consider the existence of other non-party victims in ruling on whether a scheme exists, provided the other individuals considered were affected in a way qualitatively similar to that of the plaintiff. <u>See</u>, <u>e.g.</u>, GICC, 67 F.3d at 468 (finding no continuity due to, *inter alia*, plaintiff's failure to identify other victims).

Plaintiff calls the Court's attention to <u>*First Interregional Advisors Corp. v. Wolff*</u>, 956 F. Supp. 480 (S.D.N.Y. 1997). There, plaintiff alleged that in May 1994 and "over the next several weeks" defendant committed acts of mail and wire fraud in order to obtain financing from plaintiff. <u>*Id.*</u> at 483. "The alleged scheme eventually came to an end when [plaintiff] visited [defendant's] offices...[and] discovered that [defendant's] business was in serious financial trouble." <u>*Id.*</u> at 483-4. It is unclear from the opinion when this visit took place, but by February 1995, plaintiff demanded payment of a guarantor of the loans and withdrew whatever it could from defendant's account. <u>*Id.*</u> at 484. Thus, with respect to plaintiff, the scheme lasted, at most, nine months. However, the court found that both closed-ended and open-ended continuity existed, as plaintiff "alleged a scheme that defrauded not one but several lenders and was supported by numerous predicates that occurred over a period of almost *fourteen months*." <u>*Id.*</u> at 486 (emphasis added). Because the scheme, as it affected the <u>*Wolff*</u> plaintiff lasted only nine months, the court must have taken into account acts of mail and wire fraud alleged that involved other victims but were identical in nature to those acts alleged by plaintiff.

Furthermore, if, as Defendant argues, only the acts involving Plaintiff can be considered in determining whether the scheme alleged was continuous, then schemes could remain in force, provided the orchestrators changed targets prior to the accrual of a "substantial" period of time. Given Congress' goal in defining a "pattern of racketeering" to "exclude from the reach of RICO criminal acts that were merely 'isolated' or 'sporadic,'" *Merrill Lynch, Pierce, Fenner & Smith*, 1994 WL 88129, at *27 (Mar. 15, 1994) (*quoting H.J.*, 492 U.S. at 239), and "Congress'...concern [with]...long-term criminal conduct," *H.J.*, 492 U.S. at 242, this Court considers those acts alleged to have been committed by Defendant in acquiring loans from other lenders as part of the same scheme. If those lenders were party to this action, certainly the acts alleged would count. Continuity of a scheme cannot turn on identity of the plaintiffs in a given action. Therefore, Plaintiff has sufficiently pleaded close-ended continuity.

        b.     *Open-Ended Continuity*

Open-ended continuity can be sufficiently pleaded in a number of ways. A plaintiff can show that "the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future,"or that "the predicate acts or offenses are a part of an ongoing entity's way of doing business," whether or not that business exists primarily for criminal purposes. *H.J.*, 492 U.S. at 242-3. To show that the predicate acts are an entity's way of doing business, Plaintiff must either allege that the entity exists for criminal purposes (as is the case with organized crime syndicates) or that "the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id.* at 243. Plaintiff argues the latter, that D.C.A. regularly committed the acts alleged in the Amended Complaint.

"This determination is inherently fact bound." *First Capital Asset Management, Inc. v.*

*Brickelbush, Inc.*, 150 F. Supp. 2d 624, 634 (S.D.N.Y. 2001). As such, the Court finds that, construed in the light most favorable to Plaintiff, the Amended Complaint alleges open-ended continuity. Plaintiff alleges that "Hanakis and the CW hid Hanakis' participation in the Front Company from prospective lenders. From April 1999 through March 4, 2004, the Front Company applied for and received more than $8 million from a succession of three lenders. As he and Hanakis agreed, the CW did not disclose to any of the three lenders that Hanakis was a principal and investor in the Front Company...With Hanakis' knowledge, consent and aid, the CW and others repeatedly fabricated accounts receivable documentation." (Affidavit ¶¶ 4, 7.) The predicate acts began immediately upon formation of the Front Company, *id.* at ¶¶ 3-4, and continued, according to the Affidavit, at least until February 2004, a month prior to Hanakis' arrest. (*Id.* at ¶ 9a.)

Again, *Wolff* is particularly instructive. In *Wolff*, plaintiff alleged that defendant "committed acts of mail and wire fraud in an attempt to obtain financing from [plaintiff]" by "paint[ing] a picture of [defendant's] sterling financial and business record." *Wolff*, 956 F. Supp. at 483. Defendants then submitted inaccurate income statements, showing "the success that other companies were having financing [defendant.]" *Id.* Plaintiff extended a series of loans to the defendant totaling $3 million until it discovered that one of the defendants was in serious financial trouble, upon which it demanded the return of the monies lent and withdrew those monies still in that defendant's account. *Id.* at 483-4. The court found that, though Plaintiff's involvement ended, plaintiff successfully alleged that the predicate acts of mail and wire fraud were a "regular way" the defendant conducted a legitimate business, allegedly defrauding several lenders, not all of whom were party to the action. *Id.* at 486; *see also United States v.*

_Gelb_, 881 F.2d 1155, 1163-4 (2d Cir. 1989) ("The requirement of continuity is satisfied; the schemes were conducted for about five years, and but for their discovery surely would have continued.").  Therefore, _Wolff_ debunks Defendant's argument that the termination of the alleged scheme precludes a finding of open-ended continuity.[2]  Additionally, as the complaints in both _Wolff_ and the instant action allege schemes designed to defraud a series of lenders through mailings containing fraudulent information, Defendant's argument that the Amended Complaint instead alleges a single scheme directed at a single victim is an unpersuasive interpretation.

Each of the cases alleged by Defendant to be analogous are distinguishable, as those cases involve schemes that, by their nature, had to or would have come to an end.  _See generally First Capital_, 150 F. Supp. 2d at 634 (no open-ended continuity where "it [was] significant that the alleged acts here all revolve around a bankruptcy," an "inherently terminable" event); _see also Cofacredit_, 187 F. 2d 229 (finding "inherently terminable" scheme where defendants submitted invoices until reaching the upward limit of insurance policy); _GICC Capital Corp. v. Technology Finance Group, Inc._, 67 F.3d 463, 466 (2d Cir. 1995) (no open-ended continuity where "all available funds had already been looted"); _New York Transportation, Inc. v. Naples Transportation, Inc._, 116 F. Supp. 2d 382, 389 (E.D.N.Y. 2000)

_____

[2]        Defendant cites _Oak Beverages, Inc. v. TOMRA of Massachusetts, L.L.C._, 96 F. Supp. 2d 336 (S.D.N.Y. 2000), in support of his argument that the termination of the alleged scheme precludes a finding of open-ended continuity.  (Def. Mem. of Law at 12.)  However, the _Oak Beverages_ plaintiff argued that open-ended continuity existed because of a scheme that, _by its nature_, would continue indefinitely into the future, one of several ways a plaintiff can show open-ended continuity.  _Oak Beverages_, 96 F. Supp. 2d at 348.  In the instant action, Plaintiff does not argue that the alleged scheme was one that by its nature would continue indefinitely, but that the scheme was the "regular way" Defendant operated D.C.A., rendering irrelevant the fact that it ended. Furthermore, if Defendant's reading of the requirement were correct, the concept of open-ended continuity would be nearly meaningless, as only a pattern of racketeering that was ongoing throughout the litigation would qualify.

(Block, J.) ("The threat that defendants would engage in further efforts to take over and loot New York Transportation necessarily ended when the company and its assets were under their control."); *China Trust Bank v. Standard Chartered Bank, PLC*, 981 F. Supp. 282 (S.D.N.Y. 1997) ("single alleged scheme" found where plaintiff named only one account in defendant bank defrauded).

Plaintiff has sufficiently alleged that "the predicate racketeering acts of mail and wire fraud were a regular way that [the Front Company] in this case conducted its 'ongoing legitimate business'...[and] has sufficiently pleaded 'open-ended continuity.'" *Wolff*, 956 F. Supp. at 486.

2. *Enterprise*

As stated earlier, RICO targets conduct of an enterprise through a pattern of racketeering activity. "'[E]nterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An "enterprise" is a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). It is proved by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.*

The enterprise must "have an existence beyond that which is merely to commit each of the acts charged as predicate offenses." *O & G Carriers, Inc. v. Smith*, 799 F. Supp. 1528, 1541 (S.D.N.Y. 1992). Additionally, the person alleged to have conducted the affairs of the enterprise, *i.e.,* the "RICO person," must be distinct from the enterprise itself, *i.e.*, the "RICO enterprise." *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) ("[A] corporate entity may not be both the RICO person and the RICO

enterprise.").

Plaintiff argues that "the prohibited activity alleged is separate and distinct from the enterprise itself" because "D.C.A. is an incorporated apparel company...in the business of manufacturing apparel." (Pl. Mem. of Law at 13-14.)

In response, Defendant argues that Plaintiff has not alleged an enterprise because "employees in association with a corporation do not form an enterprise distinct from the corporation." _Nasik Breeding & Research Farm, Ltd. v. Merck & Co._, 165 F. Supp. 2d 514, 539 (S.D.N.Y. 2001) (*quoting* _Riverwoods_, 30 F.2d at 344). Taken from the case cited by _Nasik_, the full sentence of the quotation cited by Defendant reads: "Thus, where employees of a corporation associate together to commit a pattern of predicate acts *in the course of their employment and on behalf of the corporation*, the employees in association with the corporation do not form an enterprise distinct from the corporation." _Riverwoods_, 30 F.2d at 344 (emphasis added).

This rule "focuses...on the culpable party and recognizes that the enterprise itself is often a passive instrument or victim of the racketeering activity," _Riverwoods_, 30 F.2d at 344, in line with RICO's legislative policy. _Bennett v. United States Trust Company of New York_, 770 F.2d 308, 315 (2d Cir. 1985) ("[R]equiring a distinction between the enterprise and the person comports with legislative intent and policy."). Thus, the framing of the rule by Defendant is inaccurate. It is not meant to preclude a finding of an enterprise in suits against groups of employees engaging in rackeetering activity through use of a corporate entity, but meant to prevent plaintiffs from naming corporate entities as RICO enterprises when the employees are carrying out business for the employer. _Cf. Bennet_ 770 F.2d at 344-5 ("Appellants cannot seriously contend that the actions of [alleged enterprise] were anything other than activities

of...employees carrying out the business of [defendant bank...since the alleged predicate acts] were undertaken on behalf of [defendant bank] and were directly related to the bank's business); *Nasik*, 165 F. Supp. 2d at 539 ( "a corporate entity may not be both a RICO person and the RICO enterprise."); *Bennett*, 770 F.2d at 315 ("[A] corporate entity may not be simultaneously the "enterprise" and the "person" who conducts the affairs of the enterprise through a pattern of racketeering."). Defendant's argument is therefore without merit.

The Amended Complaint and Affidavit do allege a difference between the RICO person (Hanakis) and the enterprise D.C.A. (Am. Complaint ¶¶ 10, 16.) Plaintiff alleges, *inter alia*, that Hanakis: was principal of D.C.A; "knowingly engaged in numerous acts of mail fraud...in furtherance of a scheme to defraud" Plaintiff; "participated...in the conduct of D.C.A.'s affairs through a pattern of racketeering;" that he worked with the CW to hide his participation in the Front Company; used a "substantial portion" of the funds advanced by Plaintiff and other lenders to pay personal debts; and, along with the CW, "repeatedly fabricated accounts receivable documentation," and misappropriated funds. (Am. Complaint ¶¶ 6, 17, 27; Affidavit ¶¶ 4, 6-9.) The Superceding Indictment alleges, *inter alia*, that, "to induce [Plaintiff and other lenders] to transfer funs to D.C.A. Associates pursuant to loan agreements...Defendant Michael Hanakis...agreed to submit and submitted to the...lenders false and misleading documents;" and that Defendant agreed to transfer and did transfer loan proceeds to "Sham Companies" to fund D.C.A.'s payments to the lenders. (Superceding Indictment ¶¶ 7, 8). These allegations fulfill the requirement that the RICO person and enterprise be distinct.

C.    *Colorado River* Abstention

"Under the *Colorado River* exception the court may abstain in order to conserve federal

judicial resources only in 'exceptional circumstances,' where the resolution of existing concurrent state-court litigation could result in 'comprehensive disposition of litigation.'" _Woodford v. Community Action Agency of Greene County, Inc._, 239 F.3d 517, 522 (2001). However, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." _Colorado River Water Conservation District v. United States_, 424 U.S. 800, 814 (1976). Therefore, the court must engage in a "careful balancing of the important factors as they appear in a given case, _with the balance weighted in favor of the exercise of jurisdiction_." _Moses H. Cone Memorial Hospital v. Mercury Constr. Corp._, 460 U.S. 1, 16 (1982) (emphasis added).

1.    *Requirement that Actions Must be Parallel*

Before a court can reach the issue of whether _Colorado River_ abstention is warranted, it must first find that the state and federal actions at issue are "parallel." _Dittmer v. County of Suffolk_, 146 F.3d 113, 118 (2d Cir. 1998); _see_ _also_ _Sheerbonnet, Ltd. v. American Express Bank, Ltd._, 17 F.3d 46 (2d Cir. 1994), *cert denied*, 513 U.S. 813 ("A finding that the proceedings are concurrent is essential to considering the exercise of _Colorado River_ abstention."). "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." _Id._ (*quoting* _Day v. Union Mines, Inc._, 862 F.2d 652, 655 (7th Cir. 1988)).

On March 10, 2004, Plaintiff filed an action against both D.C.A. and Adam Selden, President, Secretary, Director, and principal shareholder of D.C.A. (the "State Court Action"). (William Rome Decl. Ex B.)  The complaint in the State Court Action asserts causes of action in breach of contract, enforcement of a guaranty, conversion and for seizure of D.C.A.'s assets. (Rome Decl. Ex B.)   In support of its argument that the state and federal actions are parallel,

Defendant claims that the facts at issue overlap (as both actions arise out of the loans extended to D.C.A. by Plaintiff) and that the fact the defendants in each action are different "does not render the proceedings non-parallel."  (Def. Reply  Mem. of Law at 7-8.)

Plaintiff argues that the State Court Action is not parallel to the instant one because the defendants are different.  Hanakis is the only defendant is this action and D.C.A. and Selden are the only defendants in the State Court action.  (Pl. Mem. of Law at 15.)  Additionally, though both actions include RICO and fraud claims, the State Court Action contains additional claims against D.C.A. and Selden, Rome Decl. Ex B. Moreover, in this action Plaintiff brings claims under New York Debtor and Creditor Law, and for Unjust Enrichment which have no counterpart in the State Court Action.  (Am. Complaint ¶¶ 33-50, 56-58.)   Abstention is not warranted under these circumstances.

"The mere existence of overlapping issues does not make the causes parallel."  _Merrill Lynch, Pierce, Fenner & Smith v. Young_, 2994 WL 88129, *4 (S.D.N.Y. Mar. 15, 1994) (declining to find cases parallel when some claims overlapped but cases had different parties and some defendants in federal case were not a party to state case).  Defendant is correct that "what matters is that the claims concern the same events and involve 'sufficient overlap of subject matter.'"  _Bernstein_, 850 F. Supp. at 184.  Though both cases involve the same loans extended by Plaintiff, the fact that Hanakis is not a party to the State Court Action is a distinction far more significant than the similarity of subject matter.  Defendant cites three cases in support of his contention that "abstention does not require identical parties," _Bernstein v. Hosiery Manufacturing Corp. of Morganton, Inc._, 850 F. Supp. 176 (E.D.N.Y. 1994), but none of the cases cited (or that this Court is aware of) stay or dismiss an action in federal court when the

defendant is not party to the state proceedings. The problem is not, as Defendant's memorandum implies, "that Hanakis, and not D.C.A. or Selden, is the only defendant in the instant action," Def. Reply Mem. of Law at 7, but that Hanakis would no longer be part of *any* action were the Court to abstain from adjudicating the claims against him. Defendant fails to cite any cases in which a court finds two actions to be parallel under these circumstances and the ones he cites are distinguishable on significant grounds:

In both *Bernstein* and *Great South Bay v. Allstate Ins. Co.*, 204 F. Supp. 2d 492, 497 (E.D.N.Y. 2002) (Wexler, J.), the court abstained where the state action contained every party to the federal action, plus additional plaintiffs. *Bernstein*, 850 F. Supp. at 184. No defendants were eliminated by abstention in these cases. Because "[t]he absence of a pending action against [a defendant seeking abstention] is by itself sufficient grounds for denial [of a motion to abstain]," *Vaccaro v. Lew*, 82 F.R.D. 455, 456 (E.D.N.Y. 1979), the State Court and instant actions cannot be considered parallel. *See id.* (denying motion to stay where plaintiff sued treating obstetrician in federal court and sued consulting physician and hospital in state court for injuries arising from the same alleged incident of malpractice).

### 2. *Colorado River* Factors

Even if the Court found the actions to be parallel, abstention would still be improper under the six-factor test articulated in *Colorado River* and *Moses Cone*: "(1) whether the controversy involves a res over which one of the courts has assumed jurisdiction...(2) whether the federal forum is less convenient than the other for the parties...(3) whether staying or dismissing the federal action will avoid piecemeal litigation...(4) the order in which the actions were filed...and whether the proceedings have advanced more in one forum than the other...(5)

whether federal law provides the rule of decision...and (6) whether the state procedures are adequate to protect the plaintiff's federal rights." _Woodford_, 239 F.3d at 522 (quoting _Colorado River_, 424 U.S. at 813, 817-818 and _Moses Cone_, 460 U.S. 1 at 22, 26-27). However, "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavy weighted in favor of jurisdiction." _Moses Cone_, 460 U.S. at 16.

In this dispute, there is no _res_ over which a particular court has jurisdiction.[3] The state and federal courthouses are in close proximity to each other. Therefore, factors (1) and (2) weigh in favor of federal jurisdiction.

Factors (5) and (6) are related in this case. Both cases have claims under both federal and state law and both courts are equipped to handle each claim. In support of its argument that the state court should be the preferred forum, Defendant cites several cases in which, unlike the instant case, significant state or local law issues are implicated. _See_, _e.g._, _Great South Bay_, 204 F. Supp. 2d at 498 (abstaining where no federal law involved and state law at issue "novel" and "unsettled"); _Bernstein_, 850 F. Supp. 185 (abstaining where, _inter alia_, all issues involved state law); _Arkwright_, 762 F.2d at 211 (abstaining where "serious issues of state and local law and the construction of state and municipal buildings, safety and fire codes" present). Though

---

[3] Defendant argues that the seizure of D.C.A.'s assets suggests that this factor weigh in favor of abstention. However, this is an action for monetary damages, and though the loans at issue were extended to D.C.A., the first _Colorado River_ factor looks to whether there is a particular piece of real or tangible property the rights to which are in dispute. Plaintiff is not seeking to recover "particular dollars" or particular assets of D.C.A.; money alone cannot be considered a _res_.

Defendant is correct that the state court can adequately hear Plaintiff's RICO claims, "[t]he possibility that the state court proceeding might adequately protect the interests of the parties is not enough to justify the district court's deference to the state action. This factor is more important when it weighs in favor of federal jurisdiction." _Bethlehem_, 800 F.2d at 328-329; _see also_ _King v. Hahn_, 885 F. Supp. 95, 98-99 (S.D.N.Y. 1995) ("[A]lthough any possible inadequacy of the state forum to protect the federal plaintiff's rights would provide a strong reason to exercise federal jurisdiction, the adequacy of the state forum does not weigh heavily in favor of dismissal pursuant to _Colorado River_.").

Additionally, Plaintiff brings claims here that are not part of the State Court Action, which also counsels against abstention. _See_ _Bethlehem Contracting Co. v. Lehrer/McGovern_, 800 F.2d 325, 328 (2d Cir. 1986) (reversing dismissal where single construction accident resulted in separate state and federal actions, defendant only party to the federal action and tort action against defendant "ha[d] no counterpart in the state litigation"); _Merrill Lynch_, 1994 WL 88129, at *4 ("[B]ecause the state case does not 'embrace' all of the issues asserted in the federal litigation, the state forum is not necessarily adequate to protect plaintiff's rights"). Therefore, factors (5) and (6) do not weigh in favor of abstention.

For the remaining _Colorado River_ factors, Defendant presents stronger, but still unpersuasive arguments for abstention. Often considered the most important, the third factor (the risk that the exercise of federal jurisdiction in this case would create "piecemeal litigation") is concerned with "lawsuits that pose[] a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel." _Woodford_, 329 F.3d at 524. As such, it is most often used where "all of the potentially liable defendants are parties in one lawsuit, but in

the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are non parties." *Id.* (*quoting De Cisneros v. Younger*, 871 F.2d 305, 308 (2d Cir. 1989) (abstaining where plaintiff was already party to state suits with same defendant and defendant faced risk of liability in two forums with risk of inconsistent result); *General Reinsurance Corp. v. Ciba-Geigy Corp.*, 853 F.2d 78, 81 (2d Cir. 1988) (abstaining where state claim raised all issues between same parties); *and Lumbermens Mutual Casualty Co. v. Connecticut Bank & Trust*, 806 F.2d 411, 414 (2d Cir. 1986) (stay justified because of "possibility of two interpretations of the same policy language in different courts, leaving the insured possibly with insufficient coverage from the insurers after years of paying premiums")). Usually (and in all cases cited by Defendant), the risk of "piecemeal litigation" comes into play where the same parties are involved in both the federal and state actions and/or, in the insurance context, the case concerns multiple insurers and inconsistent results could mean no coverage for an injured party. *See generally, Amer. Int'l Underwriters, Inc. v. Continental Ins. Co.*, 843 F.2d 1253 (9th Cir. 1988); *Arkwright*, 762 F.2d 205;   That is not the case here.

Though Defendant argues that, absent abstention there is a risk of "additional litigation on assertions of claim and issue preclusion" and that there is a "real danger of inconsistent adjudications," Def. Mem. of Law at 22 n.5, he does not identify exactly how that could happen when, according to the parties, the State Court Action has been dismissed pursuant to a settlement agreement.  (*See* Transcript of 5/19/05 Oral Argument at 14-15.)

Additionally, Res judicata, or claim preclusion, typically applies where the parties are the same and a new argument is made that could have been made in the first proceeding.  *See*, *e.g.*, *Reilly v. Reid*, 45 N.Y. 2d 24, 27-28 (1978) (res judicata barred second proceeding for same

20

cause of action between same parties); _Eidelberg v. Zellermayer_, 5 A.D.2d 658, 662-3 (applying

res judicata where "all parties in the [second] action were in the prior action" and new claims

based on "the same transaction"); _Muka v. New York State Bar Assoc._, 120 Misc.2d 897 (N.Y.

Sup. Ct. 1983) (res judicata barred claims made in fourth litigation between parties). Similarly,

collateral estoppel, or issue preclusion, does not apply unless the party against whom it is

invoked had a "full and fair opportunity to contest the decision now said to be controlling."

_Schwartz v. Public Administrator of Bronx_, 24 N.Y. 65, 71 (1969). "Due process...would not

permit a litigant to be bound by an adverse determination made in a prior proceeding to which he

was not a party or in privity with a party." _Gilberg v. Barbieri_, 53 N.Y. 2d 285, 291 (1981)

(citations omitted). Therefore, Plaintiff is the only party against whom either theory may be held

and Defendant would face no prejudice.

The fourth factor (the order in which the actions were filed and whether proceedings in

one have advanced further than the other) also weighs in favor of abstention, though not strongly

so, considering Defendant is not part of that action and, as judgment has been entered in that

case, it is open only for possible enforcement proceedings.

"No one factor is necessarily determinative; a carefully considered judgment taking into

account both the obligation to exercise jurisdiction and the combination of factors counselling

against that exercise is required." _Colorado River_, 424 U.S. at 818-819. Therefore, "[i]n light of

the heavy presumption favoring the exercise of federal jurisdiction and the lack of exceptional

circumstances" in this case, _Colorado River_ abstention is not warranranted.


III. _Conclusion_

The Defendant's motion to dismiss is denied. Plaintiff's Amended Complaint sufficiently alleges a pattern of racketeering activity committed by Defendant, in conjunction with the CW and through use of fraudulent mailing and wirings over a five year span of time during which Defendant secured loans from various lenders and used the funds extended to D.C.A. for his own purposes. Plaintiff sufficiently alleges the existence of a distinct RICO enterprise, or D.C.A./the Front Company, through which the alleged predicate acts were conducted. Additionally, the State Court Action cannot be considered parallel to this action, as Defendant is not a party thereto and, as far as the Court is aware, would cease to be a party in any civil litigation related to the events alleged in the Amended Complaint. Furthermore, even if the actions were parallel, the circumstances of this action, in totality, counsel against abstention under the six-factor *Colorado River* test.

**SO ORDERED.**

_____S/_____
SANDRA L. TOWNES
UNITED STATES DISTRICT JUDGE

Dated:       June 28, 2005
              Brooklyn, NY